## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

JAMES F. VAN ORDEN
COZEN O'CONNOR
1 Liberty Place, 1650 Market Street, Suite 2800
Philadelphia, PA  19103
Telephone No.: (215) 665-4625
Fax No. (215) 665-2013
Email: jvanorden@cozen.com

| | |
|---|---|
| ROCCO F. AND GLORIA JEAN COLASURDO;<br>MISSION ROCK, LLC; AND FROG ROCK<br>GOLF & COUNTRY CLUB<br>420 Boyer Avenue<br>Hammonton, New Jersey 08037,<br><br>　　　　　　　　Plaintiffs<br><br>　　　　v.<br><br>TOWN OF HAMMONTON, NEW JERSEY<br>100 Central Avenue, Hammonton Town<br>New Jersey 08037<br><br>　　　　　　　　Defendant. | CASE NO.: _____ |

## COMPLAINT

Plaintiffs Rocco F. Colasurdo, Gloria Jean Colasurdo, Mission Rock, LLC and Frog Rock

Golf & Country Club ("Plaintiffs"), by and through their attorneys Cozen O'Connor, for their

Complaint against Defendant, Town of Hammonton, New Jersey, alleges as follows:

## INTRODUCTION

1.      This Complaint alleges violations under the Federal Water Pollution Control Act, 33

U.S.C. § 1251 et. seq. (hereinafter, "Clean Water Act" or "CWA") and the New Jersey

Environmental Rights Act, N.J.S.A. 2A:35-1 et seq., for an unlawful discharge of treated sewage

to waters of the State of New Jersey in violation of the New Jersey Water Protection Control Act

pursuant to N.J.S.A. 58:10A-6(a) and N.J.S.A. § 2A:35A-1, et seq., caused by the continuing

improper discharges of effluent by the Hammonton Waste Water Treatment Plant ("Hammonton

WWTP") from its Boyer Avenue infiltration trenches onto the Frog Rock Golf & Country Club

Golf Course and Plaintiff's adjacent lands.  Further this Complaint alleges that Defendant's

actions constitute a nuisance, a trespass, and negligence under New Jersey law.


## JURISDICTION AND VENUE

2.      This action arises under the CWA § 505(a), 33 U.S.C. § 1365(a), and this court has

subject matter jurisdiction over the claims set forth under the Clean Water Act and under 28

U.S.C. §1331.

3.      Plaintiffs gave notice to defendants of violations alleged in this Complaint on November

2, 2018 and a copy of that notice was served on the Administrator of the United States

Environmental Protection Agency ("EPA"), the Administrator of the relevant Regional Office of

the EPA (Region 2), and the New Jersey Department of Environmental Protection ("DEP"),

subject to 33 U.S.C. §1365(a)(1). A true and correct copy of this notice is attached hereto as

Exhibit 1 (hereinafter, "2018 Notice Letter").

4.      More than sixty (60) days has passed since the service of the Plaintiffs' 2018 Notice

Letter for purposes of Section 505(b) of the CWA, 33 U.S.C. 1365(b).

5.     More than thirty (30) days has passed since the service of the Plaintiff's 2018 Notice Letter as required by the New Jersey Environmental Rights Act, N.J.S.A. § 2A:35A-11 ("ERA").

6.     Plaintiffs have provided Notices of Tort Claims to the Defendant with respect to each of the common law claims set forth herein.  A true and correct copy of the Notices of Tort Claim forms are provided as Exhibit 2 with attachments omitted.

7.     Neither the United States Environmental Protection Agency nor the New Jersey Department of Environmental Protection has commenced or is diligently prosecuting a civil, criminal, or administrative action addressing the alleged violations at issue in this Complaint.

8.     In relevant part, pursuant to 33 U.S.C. § 1365(a), any citizen may commence a civil action on his own behalf against any person including a governmental instrumentality who is alleged to be in violation of an effluent standard of limitation, which is defined to include a permit or condition thereof issued under, and which is in effect under, this chapter (including a requirement applicable by reason of).  As set forth herein, the CWA violations alleged below constitute a violation of a permit issued under that Chapter 26 of the CWA.

9.     Venue is proper in the judicial district for the District of New Jersey under 33 U.S.C. § 1365(c)(1) and 28 U.S.C. § 1331.

10.    The court has jurisdiction over the New Jersey ERA and common law claims set forth herein pursuant to its pendant jurisdiction pursuant to 28 U.S.C. § 1367 as those claims derive from a common nucleus of operable facts as the federal claims set forth herein such that a plaintiff would ordinarily be expected to try both the federal and state claims in one proceeding

11.    The consideration of the federal and state claims in one case promotes judicial economy, convenience and fairness to the litigants.

## PARTIES

12.    Plaintiffs are the owners of various parcels of real property adjacent to and making up

Frog Rock Golf & Country Club, a public golf course and restaurant located at 420 Boyer

Avenue, Hammonton, New Jersey 08037.

13.    More specifically, the Frog Rock Golf & Country Club and adjacent land is comprised of

the following parcels as owned as set forth below and collectively referred to as "Plaintiffs' Real

Property":

   a. Lot 13 of Block 4303 is owned by Rocco Colasurdo and Gloria Colasurdo;
   b. Lot 14 of Block 4303 is owned by Mission Rock, LLC, through Deed dated
      November 7, 2018, and recorded in the Atlantic County Clerk's Office on
      November 7, 2018, in Book 14515 at Instrument No. 2018056883;
   c. Lot 15 of Block 4303 is owned by Mission Rock, LLC, through Deed dated
      November 7, 2018, and recorded in the Atlantic County Clerk's Office on
      November 7, 2018, in Book 14515 at Instrument No. 2018056884;
   d. Lot 16 of Block 4303 is owned by Mission Rock, LLC, through Deed dated
      August 4, 2005, and recorded in the Atlantic County Clerk's Office on
      September 6, 2005, in Book 12128 at Instrument No. 2005094254; and
   e. Lot 20 of Block 4303 is owned by Rocco Colasurdo and Gloria Colasurdo
      through Deed dated December 9, 1991, and recorded in the Atlantic County
      Clerk's Office on December 12, 1991, in Book 5307 at Page 300, et seq.

14.    In the early 1900s, the Plaintiffs' Real Property served as a cranberry bog.  It was

undeveloped and unmaintained until it was acquired and/or dedicated to its current use as a golf

course.

15.    Defendant, the Town of Hammonton, New Jersey, has offices located at 100 Central

Avenue, Hammonton Town, New Jersey 08037, and is the owner and operator of the

Hammonton WWTP, located at 100 Pleasant Mills Road, Route 542, Hammonton, New Jersey

08037, which conveys treated effluent to a groundwater drainage system located at Defendant's

Boyer Avenue discharge site (hereinafter "Boyer Avenue Trench System").

16.     The Town of Hammonton is a body politic and corporate of the State of New Jersey

pursuant to N.J.R.S. § 40:37A-55 (2013) and may sue or be sued pursuant to N.J.R.S. § 40:37A-

55 (2013).

17.     The Hammonton WWTP and the Boyer Avenue Trench System each constitutes an

instrumentality and subdivision of the Town of Hammonton.

18.     The Hammonton WWTP is subject to New Jersey Pollution Discharge Elimination

System ("NJPDES") permit number NJ0025160, authorizing the discharge of sanitary

wastewater into Hammonton Creek, which has a stream classification of PL, which connotes

"Pineland Waters" (hereinafter, "2018 NJPDES Permit."). The current NJPDES Permit

NJ0025160 was issued on May 7, 2018, became effective on July 1, 2018, and expires on June

30, 2023. The previous NJPDES Permit NJ0025160 was issued on July 5, 2012, became

effective on September 1, 2012, and was set to expire on August 31, 2017 (hereinafter, "2012

NPDES Permit").

19.     On information and belief, Defendant applied for a surface water discharge permit

renewal on or before March 4, 2017 and NJDEP did not act on that application until May 7, 2018

and, therefore, the 2012 NPDES Permit remained in effect in "administrative continuation"

status until July 1, 2018 or, in the alternative, Defendant operated the Hammonton WWTP

without a NJPDES permit during all or part of the time period from August 31, 2017 until July 1,

2018.

20.     Defendant holds a separate permit to discharge treated effluent from the Hammonton

WWTP into groundwater pursuant to New Jersey Groundwater Discharge Permit NJ0104990

("NJPDES Groundwater Discharge Permit"), which provides for such discharge through a groundwater drainage system located at the Boyer Avenue Trench System. The Groundwater Discharge Permit was issued on October 18, 2013, became effective on December 1, 2013, and expired on November 11, 2018.

## FIRST CLAIM FOR RELIEF – 2014 DISCHARGE IN VIOLATION OF NJPDES PERMITS

21.     Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 20 of this complaint as set forth fully herein.

22.     The federal CWA was enacted in 1972 with the principal purpose being to "restore and maintain the chemical, physical, and biological integrity of the nation's waters. 33 U.S.C. § 1251(a).

23.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of particular "pollutants" from a "point source" into "navigable waters" except as permitted by the National Pollutant Discharge Permitting System ("NPDES"), as defined in section 402 of the CWA.

24.     "Point Source" is defined as "any discernible, confined, and discrete conveyance, including but not limited to any pipe, ditch, channel, or conduit from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

25.     "Navigable Waters" is defined as "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7).

26.     Hammonton Creek and its tributaries at and around Plaintiff's Real Property are navigable waters as defined in 33 U.S.C. § 1362(7).

27.     Hammonton Creek and the wetlands adjacent to Hammonton Creek are Waters of the United States pursuant to 33 U.S.C. § 1362 and 40 C.F.R. § 122.2.

28.     The CWA defines "pollutant" to include "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6).

29.     The treated effluent discharged by the Hammonton WWTP is a "pollutant" as defined by 33 U.S.C. § 1362(6).

30.     States are permitted to establish and control their own discharge permitting programs upon approval by the EPA pursuant to section 402(b) of the CWA.  33 U.S.C. § 1342.

31.     New Jersey's NJPDES state discharge permitting program was approved by the EPA in 1982. The NJPDES program is administered by the Division of Water Quality within the New Jersey DEP under the New Jersey Water Pollution Control Act, N.J.S.A. 58: 10A-1 et. seq.

32.     Section 505(a) of the CWA, 33 U.S.C. § 1365(a), permits any citizen to "commence a civil action on his own behalf... (1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency...) who is alleged to be in violation of (a) an effluent standard or limitation... or (b) an order issued by the Administrator [of the EPA] or a State with respect to such a standard or limitation."

33.     Under the CWA, the EPA requires that navigable waters be subject to a use designation which determines the types of uses each body of water should be able to support uses such as "recreation" or "protection and propagation of fish" or other local wildlife.  40 C.F.R. § 131.10(a)-(b).

34.     NJDEP has defined waters "within the boundaries of the Pinelands Area as "Pineland Waters" (PL) as established in the Pinelands Protection Act. N.J.S.A. 13:18A-1 et seq.  All water

bodies located within the Pinelands Area are classified for "PL" designated uses unless they are classified as FW1 as determined by N.J.A.C. 7:9B-1.15(j), and N.J.A.C. 7:9B-1.4.

35.     PL Waters maintain the following designated uses: Cranberry bog water supply and other agricultural uses; Maintenance, migration and propagation of the natural and established biota indigenous to this unique biological system; Public potable water supply after conventional filtration treatment…and disinfection; Primary contact recreation; and any other reasonable use. N.J.A.C. 7:9B-1.12.

36.     The surface water quality criteria for PL waters require that these waters "shall be maintained as to quality in their existing state or that quality necessary to attain or protect the designated uses, whichever is more stringent." N.J.A.C.7:9B-1.14.

37.     The holder of a state NPDES permit is subject to both federal and state enforcement for failure to comply with its terms. 33 U.S.C. §§ 1319, 1342(b)(7), 1342(i).

38.     Defendant's 2013 NJPDES Permit and 2018 NJPDES Permit allow the discharge of treated effluent directly to Hammonton Creek through surface water outfall number 001A which is located at a Latitude of 39.6330556 and a Longitude of 74.7675333333333.

39.     Defendant's NJPDES Groundwater Discharge Permit allows it to land dispose treated effluent at the Boyer Avenue Trench System, which includes a lined surface impoundment and slit trench land application system which permits the use of the Boyer Avenue Trench System as an alternative to Outfall 001A.

40.     The Boyer Avenue Trench System, and each of its components constitute, a point source as defined by the CWA.  33 U.S.C. § 1362.

41.     On or around February 24, 2014, the infiltration-percolation lagoons at the Boyer Avenue Trench System overflowed releasing an estimated million or more gallons of treated effluent

which originated from the Hammonton WWTP onto the lands owned by the Plaintiffs and Frog Rock Golf and Country Club (hereinafter, "February 2014 Discharge") (See Exhibit 3).

42.     The February 2014 Discharge contained pollutants that are customary in treated municipal wastewater effluent including but not limited to phosphorous and zinc.

43.     The February 2014 Discharge occurred from the Boyer Avenue Trench System and ran across the surface of Plaintiffs' Real Property where it entered wetlands adjacent to Hammonton Creek, which caused an adverse impact on Hammonton Creek through the impairment of those wetlands and discharged pollutants into the surface waters of Hammonton Creek.

44.     The February 2014 Discharge constituted a violation of Defendant's 2013 NJPDES Permit, which only permits discharges to surface waters via Outfall 001A.

45.     The February 2014 Discharge constitutes a violation of Defendant's NJPDES Groundwater Discharge Permit, which prohibits unauthorized discharges from the Boyer Avenue Trench System's "basins."

46.     Under the Groundwater Discharge Permit, the term "basin is a collective term used to describe a variety of regulated units at NJPDES-DGW permitted facilities. . . [with the] common features of these basins . . . that they are topographic depressions or bermed areas designed to hold, treat and/or transmit pollutants."

47.     The February 2014 Discharge from the Hammonton WWTP and Boyer Avenue Trench System constitutes a violation of the CWA for which EPA may commence an action pursuant to 33. U.S.C. § 1319(b).

9

## SECOND CLAIM FOR RELIEF – 2016 DISCHARGE IN VIOLATION OF

## NJPDES PERMITS

48.     Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 47 of this Complaint.

49.     On or around January 9, 2016, the infiltration-percolation lagoons at the Boyer Avenue Trench System overflowed releasing an estimated ten thousand gallons or more of treated effluent which originated at the town's sewage treatment plant onto Plaintiffs' Real Property (hereinafter, "January 2016 Discharge") (See Exhibit 4).

50.     The January 2016 Discharge contained pollutants that are customary in treated municipal wastewater effluent including but not limited to phosphorous and zinc.

51.     The January 2016 Discharge occurred from the Boyer Avenue Trench System and ran across the surface of Plaintiffs' Real Property, where it entered wetlands adjacent to Hammonton Creek, where it caused an adverse impact on Hammonton Creek through the impairment of those wetlands and discharged into the surface waters of Hammonton Creek.

52.     The January 2016 Discharge constituted a violation of Defendant's 2013 NJPDES permit, which only permits discharges to surface waters via Outfall 001A.

53.     The January 2016 Discharge constituted a violation of Defendant's NJPDES Groundwater Discharge Permit, which prohibits unauthorized discharges from the Boyer Avenue Trench System's "basins."

54.     The January 2016 Discharge from the Hammonton WWTP and Boyer Avenue Trench System constitutes a violation of the CWA for which EPA may commence an action pursuant to 33. U.S.C. § 1319(b).

## THIRD CLAIM FOR RELIEF – 2017 DISCHARGE IN VIOLATION OF

## NJPDES PERMITS

55.     Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 54 of this complaint as set forth fully herein.

56.     On or around March 21, 2017, Defendant diverted an estimated 100,000 gallons of effluent stored in the infiltration-percolation lagoons at the Boyer Avenue Trench System through an illicit, temporary pipe which was directed toward the downgradient land that is Plaintiffs' Real Property (hereinafter, "March 2017 Discharge") (See Exhibit 5).  That illicit, temporary pipe constitutes a point source under the CWA. 33 U.S.C. §1362.

57.     The March 2017 Discharge contained pollutants that are customary in treated municipal wastewater effluent including but not limited to phosphorous and zinc.

58.     The March 2017 Discharge occurred from the Boyer Avenue Trench System and ran across the surface of Plaintiffs' Real Property, where it entered wetlands adjacent to Hammonton Creek, which caused an adverse impact on Hammonton Creek through the impairment of those wetlands and discharged into the surface waters of Hammonton Creek.

59.     The March 2017 Discharge constituted a violation of Defendant's NJPDES permit, which only permits discharges to surface waters via Outfall 001A.

60.     The March 2017 Discharge constituted a violation of Defendant's 2013 NJPDES permit, which only permits discharges to surface waters via Outfall 001A.

61.     The March 2017 Discharge constituted a violation of Defendant's NJPDES Groundwater Discharge Permit, which prohibits unauthorized discharges from the Boyer Avenue Trench System's "basins."

62.     The March 2017 Discharge from the Hammonton WWTP and Boyer Avenue Trench System constitutes a violation of the CWA for which EPA may commence an action pursuant to 33. U.S.C. § 1319(b).

## FOURTH CLAIM FOR RELIEF  – JANUARY 2018 DISCHARGE IN VIOLATION OF NJPDES PERMITS

63.     Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 62 of this complaint as set forth fully herein.

64.     On or around January 13, 2018, the infiltration-percolation lagoons at the Boyer Avenue Trench System overflowed releasing an estimated ten thousand or more gallons of treated effluent which originated at the town's sewage treatment plant onto Plaintiffs' Real Property (hereinafter, "January 2018 Discharge") (See Exhibit 6).

65.     The January 2018 Discharge contained pollutants that are customary in treated municipal wastewater effluent including but not limited to phosphorous and pollutants that arose through the treatment of effluent at the Hammonton WWTP including but not limited to zinc.

66.     The January 2018 Discharge bypassed the NPDES-permitted Boyer Avenue Trench System and ran across the surface of Plaintiffs' Real Property and entered Hammonton Creek and wetlands adjacent to Hammonton Creek.

67.     The January 2018 Discharge constituted a violation of Defendant's NJPDES permit, which only permits discharges to surface waters via Outfall 001A.

68.     The January 2018 Discharge constituted a violation of Defendant's NJPDES Groundwater Discharge Permit, which prohibits unauthorized discharges from the Boyer Avenue Trench System's "basins."

69.     The January 2018 Discharge from the Hammonton WWTP and Boyer Avenue Trench System constitutes a violation of the CWA for which EPA may commence an action pursuant to 33. U.S.C. § 1319(b).

## FIFTH CLAIM FOR RELIEF – FEBRUARY 2018 DISCHARGE IN VIOLATION OF NJPDES PERMITS

70.     Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 69 of this complaint as set forth fully herein.

71.     On or around February 20, 2018, the infiltration-percolation lagoons at the Boyer Avenue Trench System overflowed releasing an estimated hundred thousand or more gallons of treated effluent which originated at the town's sewage treatment plant onto Plaintiffs' Real Property (hereinafter, "February 2018 Discharge") (See Exhibit 7).

72.     The February 2018 Discharge contained pollutants that are customary in treated municipal wastewater effluent including but not limited to phosphorous and zinc.

73.     The February 2018 Discharge bypassed the NPDES-permitted Boyer Avenue Trench System and ran across the surface of Plaintiffs' Real Property and entered Hammonton Creek and wetlands adjacent to Hammonton Creek.

74.     The February 2018 Discharge constituted a violation of Defendant's NJPDES permit, which only permits discharges to surface waters via Outfall 001A.

75.     The February 2018 Discharge constituted a violation of Defendant's 2013 NJPDES permit, which only permits discharges to surface waters via Outfall 001A.

76.     The February 2018 Discharge constituted a violation of Defendant's NJPDES Groundwater Discharge Permit, which prohibits unauthorized discharges from the Boyer Avenue Trench System's "basins."

13

77.     The February 2018 Discharge from the Hammonton WWTP and Boyer Avenue Trench System constitutes a violation of the CWA for which EPA may commence an action pursuant to 33. U.S.C. § 1319(b).

## SIXTH CLAIM FOR RELIEF – JANUARY 3, 2019 DISCHARGE IN VIOLATION OF NJPDES PERMITS

78.     Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 77 of this complaint as set forth fully herein.

79.     On or around January 3, 2019, a discharge of an estimated thousands of gallons of treated effluent occurred from an illicit, underground pipe leading from the Defendant's Sewell Avenue pumping station onto the Plaintiff's property (hereinafter, "January 3, 2019 Discharge") (See Exhibit 8).

80.     The pipe described in paragraph 79 constitutes a point source under the CWA. 33 U.S.C. §1362.

81.     The January 3, 2019 Discharge contained pollutants that are customary in treated municipal wastewater effluent including but not limited to phosphorous and zinc.

82.     The January 3, 2019 Discharge originated at the NPDES-permitted Boyer Avenue Trench System and discharged from an underground pipe that empties onto Plaintiffs' Real Property and that discharge entered Hammonton Creek and wetlands adjacent to Hammonton Creek.

83.     Town officials stated in a public, televised sessions of the governing body that took place on February 7, 2019 that the Town estimates it has discharged more than ten million gallons of treated sewer effluent and/or groundwater from this underground pipe alone onto Plaintiffs' Property since November, 2018.

84.     Town officials further admitted during the same public session that the Town of Hammonton has no easement or other legal right or entitlement to discharge treated sewer effluent and/or groundwater from this underground pipe onto Plaintiffs' Lands.

85.     The January 3, 2019 Discharge constituted a violation of Defendant's NJPDES permit, which only permits discharges to surface waters via Outfall 001A.

86.     The January 3, 2019 Discharge constituted a violation of Defendant's 2013 NJPDES permit, which only permits discharges to surface waters via Outfall 001A.

87.     The January 3, 2019 Discharge constituted a violation of Defendant's NJPDES

88.     The January 3, 2019 Discharge from the Hammonton WWTP and Boyer Avenue Trench System constitutes a violation of the CWA for which EPA may commence an action pursuant to 33. U.S.C. § 1319(b).

## SEVENTH CLAIM FOR RELIEF –JANUARY 14, 2019 DISCHARGE IN VIOLATION OF NJPDES PERMITS

89.     Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 88 of this complaint as set forth fully herein.

90.     On or around January 14, 2019, the infiltration-percolation lagoons at the Boyer Avenue Trench System overflowed releasing an estimated tens of thousands or more gallons of treated effluent which originated at the town's sewage treatment plant onto Plaintiffs' Real Property (hereinafter, "January 14, 2019 Discharge") (See Exhibit 9).

91.     The January 14, 2019 Discharge contained pollutants that are customary in treated municipal wastewater effluent including but not limited to phosphorous and pollutants that arose through the treatment of effluent at the Hammonton WWTP including but not limited to zinc.

92.     The January 14, 2019 Discharge bypassed the NPDES-permitted Boyer Avenue Trench System and ran across the surface of Plaintiffs' Real Property and entered Hammonton Creek and wetlands adjacent to Hammonton Creek.

93.     The January 14, 2019 Discharge constituted a violation of Defendant's NJPDES permit, which only permits discharges to surface waters via Outfall 001A.

94.     The January 14, 2019 Discharge constituted a violation of Defendant's 2013 NJPDES permit, which only permits discharges to surface waters via Outfall 001A.

95.     The January 14, 2019 Discharge constituted a violation of Defendant's NJPDES Groundwater Discharge Permit, which prohibits unauthorized discharges from the Boyer Avenue Trench System's "basins."

96.     The January 14, 2019 Discharge from the Hammonton WWTP and Boyer Avenue Trench System constitutes a violation of the CWA for which EPA may commence an action pursuant to 33. U.S.C. § 1319(b).

97.     Together, the February 2014 Discharge, the January 2016 Discharge, the March 2017 Discharge, the January 2018 Discharge, the February 2018 Discharge, the January 3, 2019 Discharge, and the January 14, 2019 Discharge collectively are referred to hereafter as the "Illegal Discharges."

98.     The Illegal Discharges each caused the discharge of pollutants into the Waters of the United States, the continued presence of which constitutes a continuing violation.

99.     The Illegal Discharges are indicative of a pattern and practice of discharge events which demonstrate that the Defendant, on information and belief, has not engineered or operated the Hammonton WWTP in compliance with its 2013 NJPDES Permit to the extent such permit was administratively continued pursuant to N.J. Admin. Code 7:14A–2.8 and has not operated the

Boyer Avenue Trench System in compliance with its NJPDES Groundwater Discharge Permit, and constitutes the periodic discharge without a permit in violation of violated Section 301 of the CWA, 33 U.S.C. § 1311, which prohibits the discharge of any pollutants to waters of the United States except in compliance with a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342. Each Illegal Discharge constitutes a violation of the CWA for which EPA may commence an action pursuant to 33. U.S.C. § 1319(b).

## EIGHTH CLAIM FOR RELIEF – FAILURE TO REPORT
## NPDES PERMIT VIOLATIONS

100.    Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 99 of this complaint.

101.    Sections 3.a. of each of the 2013 NJPDES Permit, the 2018 NPDES Permit, and the NJPDES Groundwater Discharge Permit require that the permittee notify NJDEP of all non-compliance when required in accordance with N.J.A.C. 7:14A-6.10 by contacting the DEP hotline at 1-877-927-6337.

102.    Section 3.b. of each of the 2013 NJPDES Permit, the 2018 NPDES Permit, and the NJPDES Groundwater Discharge Permit require that the permittee submit a written report as required by N.J.A.C. 7:14A-6.10 within five days.

103.    On information and belief, Defendant failed to call the hotline or submit a written report with respect to any of the Illegal Discharges.

104.    The alleged failure to call the hotline or submit a written report as required by the 2013 NJPDES Permit, the 2018 NPDES Permit, and the NJPDES Groundwater Discharge Permit each constitutes a violation of Section 309 of the CWA, 33 U.S.C. § 1319 which allows EPA to

pursue a civil action for any violation of a permit condition or limitation pursuant to 33 U.S.C. § 1319(a)(3) and (b).

105.    Each failure to report any of the Illegal Discharges constitutes a continuing violation of the 2012 NPDES Permit, the 2018 NPDES Permit, the NJPDES Groundwater Surface Permit and the CWA and its implementing regulations.

## NINTH CLAIM FOR RELIEF – FAILURE TO PROVIDE ACCURATE AND FULL INFORMATION TO EPA AND NJDEP IN A PERMIT APPLICATION

106.    Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 105 of this complaint as set forth fully herein.

107.    Any person who knowingly makes any false material statement, representation, or certification in any application, record, report, plan, or other document filed or required to be maintained under Chapter 26 of the CWA. . . shall, upon conviction, be punished by a fine of not more than $10,000, or by imprisonment of not more than 2 years, or both.  33 U.S.C. § 1319(c)(4).

108.    In March 2017, Defendant applied to NJDEP for a renewal of its NJPDES permit for the Hammonton WWTP (hereinafter, "March 2017 Renewal Application").

109.    In the March 2017 Renewal Application, Defendant stated, "[t]he Town has been able to direct all of its effluent flow to the Boyer Avenue Land Application and drip irrigation site with no discharge to Hammonton stream since early March 2015.  The installation and operation of the entire overland and subsurface drip irrigation system has allowed the Town to pump all flow to the effluent drip irrigation system as depicted in the December flow volumes."

110.    Nowhere in the March 2017 Renewal Application did the Defendant disclose the Illegal

Discharges which occurred between 2015 and the date of that application, each of which reached

Hammonton Creek and its adjacent wetlands.

111.    Those Illegal Discharges demonstrate that the Defendant, rather than discharge through

its permitted outfall 001A in the event of high flow events, purposely elected to direct treated

effluent to the Boyer Avenue Trench System despite a lack of storage capacity and assimilative

capacity there.

112.    The failure to disclose the Illegal Discharges is material as it led NJDEP to believe that

the Defendant did not need to discharge through Outfall 001A.

113.    The omission of the Illegal Discharges gives rise to claims under 33 U.S.C. § 1319(c)(4)

for which EPA may commence an action.

## TENTH CLAIM FOR RELIEF – THE NEW JERSEY ENVIRONMENTAL RIGHTS
## ACT AND WATER POLLUTION CONTROL ACT UNAUTHPORIZED DISCHARGE

114.    Plaintiffs reallege and incorporate by reference each and every allegation contained in

paragraphs 1 through 113 of this complaint as set forth fully herein.

115.    Plaintiffs are entitled to relief pursuant to New Jersey's ERA, which provides that:

> "[a]ny person may commence a civil action in a court of
> competent jurisdiction against any other person alleged to be
> in violation of any statute, regulation or ordinance which is
> designed to prevent or minimize pollution, impairment or
> destruction of the environment. The action may be for
> injunctive or other equitable relief to compel compliance
> with a statute, regulation or ordinance, or to assess civil
> penalties for the violation as provided by law. The action
> may be commenced upon an allegation that a person is in
> violation, either continuously or intermittently, of a statute,
> regulation or ordinance, and that there is a likelihood that the
> violation will recur in the future." N.J.S.A. § 2A:35A-1 et.
> seq.

116.    A "person" is defined in the ERA to include "the State, any political subdivision of the State and any agency or instrumentality of the State or of any political subdivision of the State." N.J.S.A. § 2A:35A-3(a).

117.    Pursuant to the delegation provisions of the CWA, NJDEP is responsible for regulating the discharge of pollutants to the surface and ground waters of the State of New Jersey in accordance with the CWA and the New Jersey Water Pollution Control Act, N.J.S.A. 58:10A-1 et seq. ("WPCA") and Chapter 7:14 of the New Jersey Code, N.J.A.C. 7:14A et seq.

118.    In enacting the WPCA, the New Jersey Legislature found and declared that "[i]t is the policy of this State to restore, enhance and maintain the chemical, physical, and biological integrity of its waters, to protect public health, to safeguard fish and aquatic life and scenic and ecological values, and to enhance the domestic, municipal, recreational, industrial and other uses of water.  N.J.S.A. 58:10A-2.

119.    "Waters of the State" are defined to include both surface water and groundwater in the State of New Jersey.

120.    Under the WPCA, "it shall be unlawful or any person to discharge any pollutant, except as provided….[by this section] or when the discharge conforms with a valid NJPDES permit… N.J.S.A. 58:10A-6(a).

121.    In addition, Section 301(a) of the CWA prohibits the discharge of particular "pollutants" from a "point source" into "navigable waters" except as permitted by the NPDES.

122.    Defendant, through its operation of the Hammonton WWTP and Boyer Avenue Trench System, has violated both the WPCA and the CWA, and it has impaired the environment, by violating its NJPDES permit and causing the overflow or release of wastewater from its facility

20

on February 24, 2014, January 9, 2016, March 21, 2017, January 13, 2018. February 20, 2018, January 3, 2019, and January 14, 2019.

123.    Defendant's WPCA violations of its NJPDES permit has been a "continuous or intermittent" violation of the WPC and the CWA with a "likelihood" to "recur" again.

124.    These occurrences of wastewater overflow or release violate state and federal laws which are "designed to prevent or minimize pollution, impairment or destruction of the environment."

125.    In addition to surface Waters of the State, the Illegal Discharges impacted groundwater Waters of the State on, below and near Plaintiffs' Real Property in contravention of the WPCA and the ERA.

126.    On information and belief, the violations of the CWA and the WPCA constitute "knowing violations."

## ELEVENTH CLAIM FOR RELIEF – THE NEW JERSEY ENVIRONMENTAL RIGHTS ACT AND WATER POLLUTION CONTROL ACT INACCURATE STATEMENT IN PERMIT APPLICATION

127.    Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 126 of this complaint as set forth fully herein.

128.    Pursuant to N.J.A.C. § 7:14-8.6, NJDEP may assess a civil administrative penalty against any person who makes a false statement, representation, or certification in any application, record, or other document required to be submitted or maintained under the WPCA or any rule, water quality standard, effluent limitation, administrative order or permit issued under the WPCA.

129.    Defendant's statement that "[t]he Town has been able to direct all of its effluent flow to the Boyer Avenue Land Application and drip irrigation site with no discharge to Hammonton

stream since early March 2015" in its March 2017 Renewal Application constitutes a false statement in violation of N.J.A.C. § 7:14-8.6.

130.   Defendant routed excess wastewater from the Hammonton WWTP to the Boyer Avenue Trench System despite a lack of storage capacity and assimilative capacity there.  Further, on information and belief, Defendant was routing excess wastewater from the Boyer Avenue facility through an unauthorized underground pipe which emptied onto Plaintiff's Real Property.

131.   Defendant's failure to accurately apply for a NJPDES permit constitutes a "continuous or intermittent" violation of the WPC and the CWA with a "likelihood" to "recur" again.

132.   Inaccurate statements to NJDEP with respect to a facility's discharge history violate state and federal laws which are "designed to prevent or minimize pollution, impairment or destruction of the environment" through appropriate, legally-binding permit limits that are designed to protect surface water quality and groundwater quality.

### TWELFTH CLAIM FOR RELIEF – COMMON LAW PRIVATE NUISANCE

133.   Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 132 of this complaint as set forth fully herein.

134.   The Illegal Discharges constitute a deprivation of Plaintiffs' private use and enjoyment of their land.

135.   The periodic discharges of large volumes of treated effluent onto the Plaintiffs' Real Property is unreasonable.  The Legislature has declared that pollution of ground and surface waters of the state continues to endanger public health and that it is unlawful for any person to discharge any pollutant except in conformance with a valid New Jersey Pollutant Discharge Elimination System Permit.  N.J.S.A. 58:10A-2 and N.J.S.A. 58:10A-6.

136.    Defendant's wrongful acts, if allowed to continue, will decrease the value of the Plaintiffs Real Property further and constitute a continuing nuisance.  The injury and damage proximately caused to Plaintiffs differs to the harm caused to the general public and is irreparable, and the depreciation in value of the Plaintiffs' Real Property will occasion the necessity for suits from time to time to collect damages from Defendant that may hereinafter accrue, both from depreciation in property value and for any further damage to Plaintiffs' Real property by reason of the continuance of the periodic placement of treated effluent on and over Plaintiffs' Real Property.

137.    The injury and damages suffered by Plaintiff from the continuation by Defendant of the nuisance complained of greatly outweigh any hardship to defendants resulting from the abatement of the nuisance.

## THIRTEENTH CLAIM FOR RELIEF – COMMON LAW TRESPASS FOR ILLEGAL DISCHARGES

138.    Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 137 of this complaint as set forth fully herein.

139.    As the result of each of the Illegal Discharges, the Defendant willfully, recklessly, knowingly and intentionally releasing, transporting, disposing of treated wastewater effluent onto Plaintiffs' Real Property.

140.    Due to Defendant's willful, reckless, knowing and intentional conduct, the value of the Plaintiffs' Real Property has been impaired to Plaintiffs' detriment.

141.    Defendant's willful, reckless, knowing and intentional actions constituted a trespass on the Plaintiffs' Real Property without the right or authority to do so.

142.   By reason of Defendant's conduct, Plaintiff has been deprived of the use and possession of certain portion of the Plaintiffs' Real Property to Plaintiffs' detriment.

## FOURTEENTH CLAIM FOR RELIEF – COMMON LAW TRESPASS FOR THE PERMANENT DISCHARGE PIPE

143.   Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 142 of this complaint as set forth fully herein.

144.   The placement of an underground pipe which originates at the Boyer Avenue facility, runs underground, and discharges onto Defendant' property constitutes a continuing trespass onto Defendant's Real Property.

145.   As the result of that underground pipe, unlawful discharges occurred there and, as a result, defendant willfully, recklessly, knowingly and intentionally releasing, transporting, disposing of treated wastewater effluent onto Plaintiffs' Real Property.

146.   Due to Defendant's willful, reckless, knowing and intentional conduct, the value of the Plaintiffs' Real Property has been impaired to Plaintiffs' detriment.

147.   Defendant's willful, reckless, knowing and intentional actions constituted a trespass on the Plaintiffs' Real Property without the right or authority to do so.

148.   By reason of Defendant's conduct, Plaintiff has been deprived of the use and possession of certain portion of the Plaintiffs' Real Property to Plaintiffs' detriment.

## FIFTEENTH CLAIM FOR RELIEF – COMMON LAW NEGLIGENCE

149.   Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 148 above as if fully set forth herein as set forth fully herein.

150.    The actions by the Defendant of causing each of the Illegal Discharges were the direct

and proximate result of negligence, carelessness, and/or acts or omissions of the Defendant

because it:

>    (a)    knew or should have known that the Illegal Discharges each caused the deposit of pollutants onto and over the Plaintiffs' Real Property;

>    (b)    failed to adequately and properly sample and monitor the treated effluent discharged as a result of the Illegal Discharges;

>    (c)    knowingly caused and intended the deposit of pollutants onto and over the Plantiffs' Real Property with respect to each of the Illegal Discharges;

>    (d)    failed to properly and adequately warn Plaintiffs that the Illegal Discharges would occur causing the deposit of pollutants onto and over the Plaintiffs' Real Property;

>    (e)    failed to properly and adequately train, instruct and supervise their agents, representatives, contractors, employees and/or servants regarding the handling, generation, treatment, transport, storage, use and disposal of treated effluent-laden wastewater in connection with each of the Illegal Discharges;

>    (f)    violated the statutes listed set forth with respect to Claims for Relief 1 through 11 herein; and/or

>    (g)    committed or caused such other negligent acts or omissions which may be revealed through discovery.

151.    Defendants owed a duty to foreseeable owners, users and tenants of any properties onto

which the treated effluent was deposited, including Plaintiffs, to exercise due care in the

handling, storage, and discharge of the treated effluent discharged as a result of each of the

Illegal Discharges and in the notification of such parties of the danger of those Illegal

Discharges.

152.   Defendant breached the duty owed to Plaintiffs in that they negligently and carelessly failed to exercise due care with respect to the generation, storage, treatment, disposal and/or use of effluent laden wastewater with respect to each of the Illegal Discharges.

153.   As a direct and proximate result of the aforesaid negligence, carelessness and/or negligent acts or omissions on the part of the Defendant, their contractors, agents, servants and/or employees, the Illegal Discharge incidents and resultant damages referred to above occurred causing injury to Plaintiffs and Plaintiffs' Real Property.

**PRAYER FOR RELIEF**

154.   Plaintiffs respectfully request that this court grant the following relief:

    a.   Assess civil or criminal penalties under the Clean Water Act pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d).

    b.   Assess injunctive relief under the Clean Water Act pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d).

    c.   Assess injunctive relief or other equitable relief pursuant to N.J.S.A. 2A:35A-4(a) in order to cease the recurrence of unlawful discharges onto and over Plaintiffs' Real Property and into Waters of the State of New Jersey. Plaintiffs seek injunctive relief pursuant to section 6 of the ERA which provides that a court may grant "temporary and permanent equitable relief, including the imposition of such conditions as may be necessary to protect the environment…" N.J.S.A. § 2A:35A-6.

    d.   Order Defendant to report each of the Illegal Discharges and submit an application for a NJPDES permit modification in order to stop future discharges (overflow and pipe-based) such as the Illegal Discharges through changes in operations and necessary capital improvements.

    e.   Enter judgment in favor of Plaintiffs for compensatory, incidental and consequential damages (including the costs of restoration of Plaintiffs' Real Property), diminution in property value, damage to Plaintiffs' reputation, costs of this action, pre-judgment interest, reasonable attorneys' fees and such other relief as the Court may deem appropriate under the circumstances.

    f.   Award attorneys' fees and related costs associated with enforcing the rights of the Plaintiffs pursuant to 33 U.S.C. § 1365(d), N.J.S.A. § 2A:35A-10(a) and New Jersey common law.  The CWA permits the award of the costs of litigation (including reasonable attorney and expert witness fees) in the event

that the Plaintiff prevails or substantially prevails in accordance with 33 U.S.C. § 1365(d). Section 10 of the ERA provides that "[i]n any action under this act the court may in appropriate cases award to the prevailing party reasonable counsel and expert witness fees...local agency or the Department of Environmental Protection, where the prevailing party achieved reasonable success on the merits. N.J.S.A. § 2A:35A-10(a).

g. Provide for such other relief as the Court deems just and equitable.

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

155.   Pursuant to Local Civil Rule 11.2, I hereby certify that the matter in controversy is the not subject of other actions.

## DEMAND FOR JURY TRIAL

156.   Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demands trial by jury in this action of all issues so triable with the undersigned acting as designated Trial Counsel.

COZEN O'CONNOR
Attorneys for Plaintiff

By: _____

Dated: February 22, 2019          James F. Van Orden, Esquire

27

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROCCO F. AND GLORIA JEAN COLASURDO;  )<br>MISSION ROCK, LLC; AND FROG ROCK )<br>GOLF & COUNTRY CLUB, )<br> )<br>Plaintiffs )<br> )<br>v. )<br> )<br> )<br>TOWN OF HAMMONTON, NEW JERSEY, )<br> )<br>Defendant. )<br> ) | CASE NO.: __ _____ |

### VERIFICATION

I, Rocco F. Colasurdo, hereby declare and verify that I am a plaintiff in the above-captioned action and have authorized the filing of the foregoing complaint. I verify under penalty of perjury that the facts set forth in the complaint are true and correct to the best of my information, knowledge, and belief.

DATED: 2-19-19

_____
ROCCO F. COLASURDO

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

ROCCO F. AND GLORIA JEAN COLASURDO; )
MISSION ROCK, LLC; AND FROG ROCK )
GOLF & COUNTRY CLUB, )
           )
                    Plaintiffs )
           )
              v. )
           )
           )
TOWN OF HAMMONTON, NEW JERSEY, )
           )
                 Defendant. )

CASE NO.: _____

### VERIFICATION

I, Gloria Jean Colasurdo, hereby declare and verify that I am a plaintiff in the above-captioned action and have authorized the filing of the foregoing complaint. I verify under penalty of perjury that the facts set forth in the complaint are true and correct to the best of my information, knowledge, and belief.

DATED: 2 - 19 -19

GLORIA JEAN COLASURDO

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ROCCO F. AND GLORIA JEAN COLASURDO; ) <br> MISSION ROCK, LLC; AND FROG ROCK ) <br> GOLF & COUNTRY CLUB, ) <br>  ) <br> Plaintiffs ) <br>  ) <br> v. ) <br>  ) <br>  ) <br> TOWN OF HAMMONTON, NEW JERSEY, ) <br>  ) <br> Defendant. ) <br>  ) | CASE NO.: __ _____ |

## VERIFICATION

I, Kristin B. Keating, hereby declare and verify that I am a managing member of Mission Rock, LLC and Vice President of Frog Rock Golf & Country Club, plaintiffs in the above-captioned action, and have authorized the filing of the foregoing complaint. I verify under penalty of perjury that the facts set forth in the complaint are true and correct to the best of my information, knowledge, and belief.

DATED: 02-19-19

_____
KRISTIN B. KEATING