**THE CODY LAW FIRM, L.L.C.**
651 S. White Horse Pike
Hammonton, NJ 08037
(609) 561-1015
Douglas L. Cody, Esquire
Attorney ID#: 029831998
douglascody@comcast.net
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| **ROCCO F. & GLORIA JEAN COLASURDO, et. al.,** | HON. NITZA I. QUINONES ALEJANDRO, U.S.D.J. |
| *Plaintiffs,* | |
| vs. | CIVIL ACTION NO. 1:19-cv-06562 |
| **TOWN OF HAMMONTON, NEW JERSEY,** | |
| *Defendant* | |

**PLAINTIFFS' BRIEF IN SUPPORT OF
MOTION TO ENFORCE SETTLEMENT AGREEMENT**

Douglas L. Cody, Esquire
THE CODY LAW FIRM, L.L.C.
651 S. White Horse Pike
Hammonton, NJ 08037
*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................................ii

PRELIMINARY STATEMENT......................................................................................1

PROCEDURAL HISTORY...........................................................................................1

STATEMENT OF FACTS……....…………………………………....…....................2

STANDARD OF REVIEW............................................................................................9

LEGAL ARGUMENT.................................................................................................10

I.      The Parties Entered into a Valid and Enforceable Settlement
        Agreement……………………………………………………….……10

II.     Defendant Violated the Settlement Agreement by Threatening Condemnation and
        Loss of Property Rights in all of the Lands and Private Homes
        Owned by Plaintiffs ……………………………………………………....12

III.    The Court Should Exercise its Equitable Powers to Enforce Summarily the
        Settlement Agreement Made in the Case Pending Before
        it..……………………………………………………………………....……15

IV.     Defendant Town of Hammonton has Acted in Bad Faith and the District Court
        Should Levy Appropriate Sanctions Against the Town, Including Monetary
        Penalties and the Award of Attorney's Fees for Enforcement…………..………..16

CONCLUSION.............................................................................................................18

## **TABLE OF AUTHORITIES**

### **Cases**

*Amatuzzo v. Kozmuik,* 305 N.J. Super. 469, 475 (App. Div. 1997) .................................................9

*American Iron & Steel Institute v. Environmental Protection Agency,*
 560 F.2d 589 (3d Cir. 1982) ...............................................................................10

*AMF, Inc. v. Brunswick Corp.,* 621 F. Supp. 456, 462 (E.D.N.Y. 1985) ....................................16

*Association Group Life, Inc. v. Catholic War Veterans,*
 61 N.J. 150, 152, 293 A.2d 382 (1972) ..........................................................13-14

*Bak A Lum Corp. v. Alcoa Bldg. Prods., Inc.*
 69 N.J. 123, 129-30, 351 A.2d 349 (1976) .....................................................13-14

*Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.,*
 228 F.3d 275, 288-89 (3d Cir. 2000).................................................................15

*Bowater North America Corp. v. Murray Machinery, Inc.,*
 773 F.2d 71, 76-77 (6th Cir. 1985) ....................................................................15

*Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.,*
 771 F.2d 5, 11 (1st Cir. 1985)............................................................................17

*Chambers v. NASCO, Inc.,* 501 U.S. 32, 45-46 (1991)...............................................................17

*Cooley v. Lisman, Civ. No. 16-4499, 2020*
 *WL 5204065 at \*4 (D.N.J. Sept. 1, 2020)* .........................................................9

*Cumberland Farms, Inc. v. New Jersey Dep't of Envtl. Prot.,*
 447 N.J. Super. 423, 438 (App. Div. 2016)........................................................9

*Dep't of Pub. Advocate, Div. of Rate Counsel v. N.J. Bd. of Pub. Utils.,*
 206 N.J. Super. 523, 528 (App. Div. 1985) 1985).............................................9

*D.R. by M.R. v. East Brunswick Bd. of Educ.,*
 109 F.3d 896, 901 (3d Cir. 1997)..............................................................10-11

*Emerson Radio Corp. v. Orion Sales, Inc.,*
 80 F. Supp. 2d 307, 311 (D.N.J. 2000)............................................................14

*Good v. The Pennsylvania Railroad Co.,*
 384 F.2d 989, 990 (3d. Cir. 1967) ....................................................................10

*Green v. Lewis & Co.,* 436 F.2d 389, 390 (3d Cir. 1970)..............................................................10

*Hobbs & Co. v. American Investors Management, Inc.,*
576 F.2d 29, 33 & n 7 (3d Cir. 1978) .................................................................................17

*In re Cendant Corp. Litig.*, 233 F.3d 188, 193 (3d Cir. 2000)......................................................10

*In re Elonex Phase II Power Management Litig.,*
No. 01-082, 2003 WL 21460391, at *3 (D. Del. June 23, 2003) ....................................17

*In re General Motors Corp. Pick-up Truck Fuel Tank Prod. Liab.,*
55 F.3d 768, 784 (3d Cir. 1995) ......................................................................................11

*In re Nazi Era Cases Against German Defendants Litig.,*
236 F.R.D. 231, 241-42 (D.N.J. 2006)............................................................................11

*Jannarone v. W.T. Co.,* 65 N.J. Super. 472, 476, 168 A.2d 72 (App. Div.)....................................9

*Jannarone v. Calamoneri*, 35 N.J. 61, 171 A.2d. 147 (1961)..........................................................9

*Kapossy v. McGraw-Hill, Inc.,*  921 F. Supp. 234, 248 (D.N.J. 1996).........................................14

*Karl's Sales & Service, Inc. v. Gimbel Bros. Inc.,*
249 N.J. Super. 487, 592 A.2d 647 (App. Div. 1991) ......................................................14

*Kovilic Const. Co., v. Missbrenner,* 106 F.3d 768, 772-73 (7th Cir. 1997)....................................17

*Link v. Wabash R.R.*, 370 U.S. 626, 630-631 (1962)......................................................................17

*Main Line Theatres, Inc. v. Paramount,* 298 F.2d 801, 804 (3d. Cir. 1962)................................10

*Morris v. Gaspero*, 522 F. Supp. 121, 125 (E.D. Pa. 1981)......................................................15-16

*Mortellite v. Novartis Crop Prot., Inc.,* 460 F.3d 483, 492 (3d Cir. 2006)....................................9

*Nolan v. Lee Ho,* 120 N.J. 465, 472 (1990) .....................................................................................9

*Onderdonk v. Presbyterian Homes***,** 85 N.J. 171, 182, 425 A.2d 1057 (1981)............................13

*Palisades Properties, Inc. v. Brunetti***,** 44 N.J. 117, 207 A.2d 522, 531 (1965)......................13-14

*Pascarella v. Bruck***,** 190 N.J. Super. 118, 125,
462 A.2d 186 (App. Div.) *certify denied*, 94 N.J. 600, 468 A.2d 233 (1983))..................9

*Pennwalt Corp. v. Plough Inc.,* 676 F.2d 77, 80 (3d Cir. 1982).................................. 9-11, 15, 17

*Penthouse Int'l, Ltd. v. Playboy Enters.*, 663 F.2d 371, 386 (2d Cir. 1981)................................17

*Pickett v. Lloyd's*, 131 N.J. 457, 467, 621 A.2d 445 (1993).........................................................13

*Pugh v. Super Fresh Food Markets, Inc.,* 60 F. Supp. 1306, 1307
    (E.D. Pa 1986) ...................................................................................................16

*Read v. Baker*, 438 F. Supp. 732, 735 (D. Del. 1977)..................................................................15

*Rosso v. Foodsales, Inc. 500 F. Supp. 274, 276 (E.D. Pa. 1980)*...........................................15-16

*Shell's Disposal & Recycyling, Inc. v. City of Lancaster*,
    504 F. App'x 194, 200 (3d Cir. 2012)................................................................. 9

*Sons of Thunder v. Borden, Inc.,* 148 N.J. 396, 420 (1997)....................................................13-14

*Standard Steel, LLC v. Buckeye Energy, Inc.,* 2005 WL 2403636 *2 (W.D.Pa.2005).................11

*Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (1992).......................................................10-11

## **<u>Statutes</u>**

33 U.S.C. § 1251..........................................................................................................................1

33 U.S.C. § 1365(a).....................................................................................................................2

N.J.S.A 20:3-1.............................................................................................................................5

N.J.S.A. 40A:12A........................................................................................................................5

N.J.S.A. 40A:12A-6.....................................................................................................................5

N.J.S.A. 40A:12A-7(c)................................................................................................................ 5

N.J.S.A. 40A:12A-7(d)................................................................................................................5

N.J.S.A. 40A:12A-8(f).............................................................................................................5-6

N.J.S.A. 40:55D-2........................................................................................................................5

N.J.S.A. 58:10A-6........................................................................................................................1

## **Other Authorities**

5 Williston on Contracts § 670, at 159-60 (3d ed. 1961) ........................................................13-15

Restatement § 205 (1981)........................................................................................................13-15

## PRELIMINARY STATEMENT

Plaintiffs submit this brief in support of the instant motion to enforce the settlement agreement in this action and for related relief.  In an act of brazen retaliation against Plaintiffs for the filing and prosecution of the instant lawsuit, Defendant Town of Hammonton violated the settlement agreement by threatening condemnation and the loss of property rights in *all* of the lands and private homes owned by Plaintiffs, including the personal residence and law office of the undersigned attorney for Plaintiffs.  Plaintiffs respectfully request relief, including the exercise of the Court's equitable powers to enforce summarily an agreement to settle a case pending before it.  Defendant Town of Hammonton has acted in bad faith and Plaintiffs respectfully request that appropriate sanctions be levied against the Town, including monetary penalties, damages, and the award of costs and attorney's fees for enforcement.

## PROCEDURAL HISTORY

This action arises under the Clean Water Act, 33 U.S.C. § 1251 et seq. ("CWA") and the New Jersey Environmental Rights Act and New Jersey Water Protection Control Act, N.J.S.A. 58:10A-6(a) ("WPCA").  Plaintiffs' claims include multiple, documented, unlawful discharges of pollutants by Defendant Town of Hammonton to waters of the United States in violation of the CWA and in violation of the New Jersey Environmental Rights Act for unlawful discharges of pollutants to waters of the State of New Jersey.  These continuing violations are caused by the serial and ongoing illegal discharges of partially treated effluent originating from the Hammonton Waste Water Treatment Plant (WWTP) and the Town of Hammonton Boyer Avenue Land Application Facility (LAF).  The discharge events are related to a lack of infiltration capacity at the Boyer Avenue LAF due to its impervious subsurface soils.

Plaintiffs brought a citizen's suit against the Defendant Town of Hammonton pursuant to 33 U.S.C. § 1365(a), which provides in relevant part that any citizen may commence a civil action on his own behalf against any person including a governmental instrumentality who is alleged to be in violation of an effluent standard of limitation, which is defined to include a permit or condition thereof.

Plaintiffs' First Amended Complaint (ECF No. 45) was filed on March 2, 2021 and Defendant Town of Hammonton filed an Answer to the First Amended Complaint (ECF No. 49) on March 22, 2021.  Cross motions for summary judgment filed by both parties were denied on December 20, 2022 (ECF No. 80).

Between April and September 2023, the parties engaged in numerous settlement conferences directed and assisted by the Court.  The parties finally entered into a written, signed settlement agreement on September 27, 2023.

## STATEMENT OF FACTS

1.      On September 27, 2023, the parties entered into a written, signed settlement agreement in this matter.  The Settlement Agreement is attached as **Exhibit A** to the Certification of Counsel filed herewith.

2.      Paragraph 6.15.b of the Settlement Agreement provides as follows:

"Possible Residential Development.  Any future development of the Plaintiff's property shall be considered by a conflict Land Use Board and not by the Joint Land Use Board of the Town of Hammonton.  Nothing contained in this subparagraph shall prohibit or restrict the Town's right to appear and offer testimony as a neighboring landowner through its representatives and/or the municipal engineer."

3.      The genesis of this provision was the Town's concern about future claims of retaliation by the Plaintiffs – a concern revealingly raised *sua sponte* by the Town prior to the assertion of any such claims by the Plaintiffs.

4.      A prior version of the settlement agreement proposed by the Town's conflict solicitor, Brian Howell, Esq., was attached to his email of September 25, 2023.  The email and proposed settlement agreement are attached as **Exhibit B** to the Certification of Counsel filed herewith.

5.      Paragraph 6.15.c of the proposed settlement agreement read:

"Possible Residential Development.  The parties acknowledge that the Plaintiff's contemplate developing a portion of its property for residential housing purposes.  The Town shall not allege that the land proposed to be developed by Plaintiffs has been polluted as a consequence of the acts set forth in Plaintiffs' Complaint.  *Further, Plaintiffs shall not, without a specific legal basis for doing so, claim that any denial or any limitation imposed on the scope of Plaintiffs' proposed development by the Town of Hammonton Joint Land Use Board is in retaliation for Plaintiffs' filing of this lawsuit.*"  (italics added).

6.      In Paragraph 6.15.a of the prior settlement agreement proposed by Brian Howell, Esq., the Town attempted to negotiate a right of first refusal to purchase from Plaintiffs, " . . . any or all of the premises utilized for golfing or golfing-related purposes . . .."  Plaintiffs at all times categorically rejected this proposal, or any other suggesting a right of first refusal in favor of the Town.

7.      Following the execution of the September 27, 2023 Settlement Agreement in this matter, the Town published online a proposed 2023 Comprehensive Master Plan (CMP) Update, which is attached to the Certification of Counsel filed herewith as **Exhibit C**.

8.      The Master Plan Implementation Committee members were appointed by Hammonton Mayor Stephen DiDonato and consisted of the following individuals:

        Stephen DiDonato, Mayor
        Tom Gribbin, Councilman / Deputy Mayor
        Jonathan Oliva, Councilman
        Richard Rehman, President: Mainstreet Hammonton
        Jim Donio, Town Advocate
        Daniel T. Bachalis, Hammonton Environmental Commission
        Mica McCullough, Hammonton Environmental Commission

Angela Donio, Hammonton Historic Preservation Commission
Michael Hozik, Hammonton Land Use Board
Anthony Decicco, Hammonton Waters & Sewer
Robert Vettese, Hammonton Public Works
Frank Zuber, Hammonton Town Clerk
Denise Mazzeo, Hammonton Recreation Lead.

9.      Jake Botticello of TRIAD Associates was listed as a Town Consultant.

10.     During the litigation, the Town delayed its Master Plan Update process and withheld potentially favorable action on zoning with respect to Plaintiffs' lands because of this lawsuit.  See Paragraphs 59 – 76 of the Declaration of Kristin B. Keating (ECF No. 74-4) filed March 31, 2022, which is attached to the Certification of Counsel filed herewith as **Exhibit D**.

11.     The CMP currently proposed by the Town places *all* of the plaintiffs' lands in a proposed redevelopment area.

12.     Section 6.4.26.J. of the CMP recommends that the entirety of Plaintiffs' property be evaluated for Redevelopment Area designation.  It reads in relevant part:

Referenced But Unconfirmed Redevelopment Areas

Document research conducted for this Master Plan Updated found references to other sections of Hammonton that were either studied for Redevelopment Area designation or actually designated to be In Need of Redevelopment.  While included herein for context, formal designation could not be verified.

Given the age of these references and their unknown status, this Master Plan Update recommends these lands be revaluated for Redevelopment Area designation as conditions and priorities warrant.

13.     Section 6.4.26.J. of the CMP includes Master Plan Map 39, which shows the affected areas, which are owned almost exclusively by the Plaintiffs.

14.     The proposed redevelopment area would include all of Plaintiffs' businesses and homes.  It also includes the personal residence and law office of the undersigned counsel.

15.    The Town took this adverse action against the Plaintiffs and their counsel without any notice whatsoever, either through the instant litigation or as the owners of the property subject to the action.

16.    The Town further published online a 2004 Master Plan Re-Examination Report as background that identified the "Frog Rock Golf Course Area" as a potential redevelopment area for age-restricted residential dwellings that would be compatible with a golf course environment.

17.    The proposed 2023 CMP Update does not, however, indicate the purposes or any limitations on the redevelopment area designation on plaintiffs' lands.

18.    Thus, after negotiating with plaintiffs to have a conflict land use board consider future development applications – said negotiations born of the Town's concern for the appearance or claims of retaliation – the Town has taken action that singles out Plaintiffs' property in the Town for a proposed redevelopment area.

19.    Under New Jersey's Municipal Land Use Law (MLUL) and Local Redevelopment and Housing Law, a Redevelopment Area designation could lead to adverse consequences for Plaintiffs, including condemnation, pursuant to the provisions of the Eminent Domain Act of 1971.

20.    Under the Local Redevelopment and Housing Law, a municipality may pursue a "Non-Condemnation Redevelopment Area" or a "Condemnation Redevelopment Area"  N.J.S.A. 40A:12A-6 reads in relevant part:

> The resolution authorizing the planning board to undertake a preliminary investigation shall state whether the redevelopment area determination shall authorize the municipality to use all those powers provided by the Legislature for use in a redevelopment area other than the use of eminent domain (hereinafter referred to as a "Non-Condemnation Redevelopment Area") or whether the redevelopment area determination shall authorize the municipality to use all those powers provided by the Legislature for use in a redevelopment area, including the power of eminent domain (hereinafter referred to as a "Condemnation Redevelopment Area").

21.    N.J.S.A. 40A:12A-7(c) provides in relevant part, "The redevelopment plan shall supersede applicable provisions of the development regulations of the municipality or constitute an overlay zoning district within the redevelopment area."  As a result, placing Plaintiffs' property in a redevelopment area may result in zoning changes that diminish Plaintiffs' property rights, including zoning density and other development rights that exist under current zoning.

22.    N.J.S.A. 40A:12A-7(d) provides in relevant part, "All provisions of the redevelopment plan shall be either substantially consistent with the municipal master plan or designed to effectuate the master plan . . .."  Accordingly, the substance of the Town's updated CMP, once adopted, will provide an important baseline that will substantially influence any redevelopment plan that includes Plaintiffs' properties.

23.    N.J.S.A. 40A:12A-8(f) reads in relevant part:

Upon the adoption of a redevelopment plan pursuant to section 7 of P.L. 1992, c. 79 (C.40A:12A-7), the municipality or redevelopment entity designated by the governing body may proceed with the clearance, replanning, development and redevelopment of the area designated in that plan. In order to carry out and effectuate the purposes of this act and the terms of the redevelopment plan, the municipality or designated redevelopment entity may:

f.  Arrange or contract with public agencies or redevelopers for the planning, replanning, construction, or undertaking of any project or redevelopment work, or any part thereof;

24.    Thus, the powers enumerated in N.J.S.A. 40A:12A-8(f) could be exercised by the municipality to name an outside developer, and not a developer of Plaintiffs' choosing, for the purpose of undertaking any project or redevelopment work.  This too substantially undermines the value of Plaintiffs' ownership interests in their property.

25.    On January 23, 2024, the undersigned counsel sent a letter to Steven A. Torrini, Esq., attorney for the Town of Hammonton in the instant litigation.  Conflict solicitor Brian G.

Howell, Esq. was copied on the email. The January 23, 2024 email and letter are attached to the Certification of Counsel filed herewith as **Exhibit E**.

26.    Counsel's letter of January 23, 2024 advised the Town of the apparent violation of the terms of the settlement agreement they entered into with Plaintiffs and expressed the hope that the issue could be resolved between the parties without the need for further motion practice.

27.    In the letter, the undersigned counsel requested that the proposed CMP be amended prior to its adoption to remove Section 6.4.26.J. of the CMP and any recommendation in that section, or any other, that any of the Plaintiffs' property be evaluated for Redevelopment Area designation. Alternatively, Plaintiffs requested that the proposed CMP be amended prior to its adoption to make explicitly clear that any evaluation of the subject property for redevelopment area designation will not result in condemnation or any diminution in the plaintiffs' property or development rights under current zoning. Exhibit E.

28.    As of the date of filing of the instant motion, Mr. Torrini has not responded to the undersigned counsel's letter of January 23, 2024.

29.    On January 26, 2024, the Town conflict solicitor, Brian Howell, sent a responsive letter, which is attached to the Certification of Counsel filed herewith as **Exhibit F**. Mr. Howell's letter read in relevant part:

Dear Doug

Thank you for your letter of January 23, 2024. Your letter has been provided to the Master Plan Review Committee for their review and comment.

At this point, this issue appears to be unrelated to the litigation and I would therefore request that future communications be directed to Joseph McGroarty, Esq., attorney for the Town's Joint Land Use Board who has been involved in the master plan revision process.

30.    Mr. Howell's responsive letter referred the matter to the Town's Joint Land Use Board, rather than a conflict board, as agreed by the parties in their Settlement Agreement.

31.    Since the January 26, 2024 letter, no person from the Town's Master Plan Review Committee, or otherwise, has provided any review or comment on the issues contained in the undersigned counsel's letter of January 23, 2024.

32.    The instant motion was made necessary because the Town is threatening condemnation and the loss of property rights.  In its responsive letter, the Town has refused to state that any evaluation of the subject property for redevelopment area designation will not result in condemnation or any diminution in the Plaintiffs' property or development rights under current zoning.

33.    The Declaration of Kristin B. Keating in support of the instant motion is attached to the Certification of Counsel filed herewith as **Exhibit G**.  As set forth in the Declaration, the threat of condemnation or downzoning in the Town's CMP impacts the Plaintiffs' housing project immediately by creating a cloud of uncertainty that fatally undermines their ability to obtain a construction loan or other related project financing.

34.    Additionally, the prospect of a looming redevelopment area designation frustrates Plaintiffs' ability to plan the development effectively, since the overlay zoning district may drastically change what can be built.

35.    Plaintiffs have incurred costs and attorney's fees in connection with the preparation and filing of the instant motion for enforcement, as set forth at **Exhibit H** to the Certification of Counsel filed herewith.

## STANDARD OF REVIEW

A settlement agreement between parties to a lawsuit is a contract." Nolan v. Lee Ho, 120 N.J. 465, 472 (1990). The burden of proving that the parties entered into a valid settlement agreement is upon the party seeking to enforce the settlement. Amatuzzo v. Kozmiuk, 305 N.J.Super. 469, 475 (App. Div. 1997).

> Since the "settlement of litigation ranks high in our public policy," *Jannarone v. W.T. Co.*, 65 N.J.Super. 472, 476, 168 A.2d 72 (App. Div.), *certif. denied sub nom.*, *Jannarone v. Calamoneri*, 35 N.J. 61, 171 A.2d 147 (1961), "settlement agreements will be honored 'absent a demonstration of fraud or other compelling circumstances.' " *Nolan, supra*, 120 N.J. at 472, 577 A.2d 143 (quoting *Pascarella v. Bruck*, 190 N.J.Super. 118, 125, 462 A.2d 186 (App. Div.), *certif. denied*, 94 N.J. 600, 468 A.2d 233 (1983)).

Cumberland Farms, Inc. v. New Jersey Dep't of Envtl. Prot., 447 N.J. Super. 423, 438 (App. Div. 2016).

To determine whether a valid and enforceable settlement agreement has been entered into between the parties, the Court must apply state contract law. Shell's Disposal & Recycling, Inc. v. City of Lancaster, 504 F. App'x 194, 200 (3d Cir. 2012); *see also* Mortellite v. Novartis Crop Prot., Inc., 460 F.3d 483, 492 (3d Cir. 2006) ("Under New Jersey law, a settlement agreement is a form of contract, and courts must look to the general rules of state contract law to resolve disputes over a settlement agreement.").

Both the Third Circuit and the State of New Jersey have strong public policies favoring settlements and strive to give effect to the terms wherever possible. Pennwalt Corp. v. Plough Inc., 676 F.2d 77, 80 (3d Cir. 1982); Cooley v. Lisman, Civ. No. 16-4499, 2020 WL 5204065, at *4 (D.N.J. Sept. 1, 2020) (citing Nolan v. Lee Ho, 120 N.J. 465, 472 (1990) and Dep't of Pub. Advocate, Div. of Rate Counsel v. N.J. Bd. of Pub. Utils., 206 N.J. Super. 523, 528 (App. Div. 1985)).

## LEGAL ARGUMENT

**I.      The Parties Entered into a Valid and Enforceable Settlement Agreement.**

Under New Jersey law, an enforceable contract requires offer and acceptance, consideration, a meeting of the minds, and sufficiently definite terms. Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992).  A voluntary settlement agreement may be binding upon the parties, regardless of whether it was made in the presence of the Court.  Green v. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970); *see also* D.R. by M.R. v. East Brunswick Bd. of Educ., 109 F.3d 896, 901 (3d Cir. 1997) (holding that a settlement agreement is binding despite the fact that it resulted from mediation instead of litigation).  Moreover, a settlement agreement does not need to be reduced to writing to be enforceable, so long as its material terms have been mutually agreed upon.  *See* Main Line Theatres, Inc. v. Paramount, 298 F.2d 801, 804 (3d. Cir. 1962); *see also* Good v. The Pennsylvania Railroad Co., 384 F.2d 989, 990 (3d Cir.1967) (holding that a settlement agreement, entered into by duly authorized counsel, was "valid and binding despite the absence of any writing or formality").

Settlement agreements are interpreted as binding contracts and are governed by the ordinary principles of contract law.  In re Cendant Corp. Litig., 233 F.3d 188, 193 (3d Cir. 2000). There is a strong judicial policy in favor of the voluntary settlement of lawsuits.  *See* Pennwalt Corp. v. Plough, 676 F.2d 77, 79-80 (3d. Cir. 1982) (holding that voluntary settlement agreements are "specifically enforceable and broadly interpreted").

The Third Circuit recognizes a strong public policy favoring settlements of disputes, the finality of judgments and the termination of litigation.  *See* American Iron & Steel Institute v. Environmental Protection Agency, 560 F.2d 589 (3d Cir. 1977); Pennwalt Corp. v. Plough, Inc., 676 F.2d 77, 80 (3d. Cir. 1982).  "Voluntary settlement of civil controversies is in high judicial

favor.  Judges and lawyers alike strive assiduously to promote amicable adjustments of matters in dispute, as for the most wholesome of reasons they certainly should."  Pennwalt, 676 F.2d at 80; In re Nazi Era Cases Against German Defendants Litig., 236 F.R.D. 231, 241-42 (D.N.J. 2006). *See also* Standard Steel, LLC v. Buckeye Energy, Inc., 2005 WL 2403636 *2 (W.D.Pa.2005) (Conti, J.) ("Settlement agreements are encouraged as a matter of public policy because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by courts.") (citing D.R. by M.R., 109 F.3d at 901). The strong public policy and high judicial favor for negotiated settlements of litigation is particularly keen "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."  In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab., 55 F.3d 768, 784 (3d Cir. 1995).

Here, the parties reached and entered into a valid and enforceable agreement to settle this case on September 27, 2023.  The Settlement Agreement was reduced to a writing that contained the material terms of settlement and was signed by duly authorized counsel.  In its recital paragraphs, the Settlement Agreement stated:

> WHEREAS, to avoid the time and expense associated with continued and further litigation involving these matters, the Parties have reached an agreement and settlement, and wish to memorialize same in a written settlement agreement, which shall reduce to writing the complete and final settlement of claims, differences and causes of action with respect to the Litigation without any admission of liability or wrongdoing;

Exhibit A.

Further, the Settlement Agreement was made ". . . in consideration of the mutual promises and covenants contained herein, and for other good and valuable consideration provided to each Party hereto, the sufficiency of which is hereby acknowledged . . .."  Exhibit A.

Paragraph 6.6 of the Settlement Agreement states: "This Agreement comprises and contains the entire and final understanding among the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral." Exhibit A.

Accordingly, the undisputed facts demonstrate that the Parties entered into a valid and enforceable Settlement Agreement. *See* Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992).

## II.    Defendant Violated the Settlement Agreement by Threatening Condemnation and the Loss of Property Rights in all of the Lands and Private Homes Owned by Plaintiffs.

The Town has violated the terms of the Settlement Agreement by threatening condemnation and the loss of property rights in all of the lands and privately owned home owned by the Plaintiffs and their counsel. The Town's actions are transparent, brazen, and outrageous. The Town and the individuals involved have acted in bad faith and with a self-evident purpose of retaliation.

The Town's action violates Paragraph 6.15.b titled "Possible Residential Development," which provides in relevant part that "Any future development of the Plaintiff's property shall be considered by a conflict Land Use Board and not by the Joint Land Use Board of the Town of Hammonton." In direct conflict with this provision, the Town's Joint Land Use Board, and not a conflict board, is in the process of adopting a CMP that clearly singles the Plaintiffs out, and directly, radically, and adversely impacts the future development of Plaintiffs' property.

Paragraph 6.1 of the Settlement Agreement is titled "Further Assurances" and reads in relevant part, "The obligations of the Parties require that the Parties exercise good faith and best efforts in effectuating and fulfilling the obligations and mutual promises set forth herein. In

- 12 -

furtherance thereof, the Parties agree at any time, and from time to time, to take such actions as may be reasonably requested and to execute any and all documents reasonably requested by any other Party to carry out and further the intent of this Agreement." Exhibit A.

The Town's actions directly conflict with and violate its contractual obligation expressed in Paragraph 6.1 to exercise good faith and best efforts in effectuating and fulfilling its obligation to avoid retaliation and the appearance of retaliation in the future development of Plaintiffs' lands. The Town's actions also violate the implied covenant of good faith and fair dealing.

> In addition, every contract in New Jersey contains an implied covenant of good faith and fair dealing. *See Pickett v. Lloyd's*, 131 N.J. 457, 467, 621 A.2d 445 (1993); *Onderdonk v. Presbyterian Homes*, 85 N.J. 171, 182, 425 A.2d 1057 (1981); *Bak–A–Lum Corp. v. Alcoa Bldg. Prods., Inc.*, 69 N.J. 123, 129–30, 351 A.2d 349 (1976); *Association Group Life, Inc. v. Catholic War Veterans*, 61 N.J. 150, 152, 293 A.2d 382 (1972); *Palisades Properties, Inc. v. Brunetti*, 44 N.J. 117, 130, 207 A.2d 522 (1965). This Court has stated that "[i]n every contract there is an implied covenant that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract; in other words, in every contract there exists an implied covenant of good faith and fair dealing.'" *Palisades Properties, supra*, 44 N.J. at 130, 207 A.2d 522 (citing 5 Williston on Contracts § 670, at 159–60 (3d ed.1961)).

Sons of Thunder v. Borden, Inc., 148 N.J. 396, 420 (1997).

In the case at bar, the Town's actions in threatening condemnation and the loss of property rights have the effect of destroying or injuring the rights of the Plaintiffs to receive the fruits of the Settlement Agreement, i.e., to pursue development of their property without the malign meddling, molestation, and retaliation from the conflicted Defendants.

The Town's violation of the express terms of the Settlement Agreement, evasion of the spirit of the bargain, and willful rendering of imperfect performance for the purpose of retaliating against and injuring the Plaintiffs are the very definition of bad faith.

> To be sure, "every contract in New Jersey contains an implied covenant of good faith and fair dealing." *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 690 A.2d 575, 587 (1997); see also Restatement (Second) of Contracts § 205 (1981) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance

- 13 -

and its enforcement."). "The implied covenant is an independent duty and may be breached even where there is no breach of the contract's express terms." *Emerson Radio Corp. v. Orion Sales, Inc.*, 80 F.Supp.2d 307, 311 (D.N.J.2000) (citing, inter alia, *Sons of Thunder, Inc.*, 690 A.2d at 575); *see also Bak–A–Lum Corp. v. Alcoa Bldg. Prods., Inc.*, 69 N.J. 123, 351 A.2d 349, 352 (1976).

The implied covenant of good faith and fair dealing requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Sons of Thunder, Inc.*, 690 A.2d at 587 (internal quotation marks omitted); *Palisades Properties, Inc. v. Brunetti*, 44 N.J. 117, 207 A.2d 522, 531 (1965). A party to a contract breaches the covenant if it acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation. *See, e.g., Sons of Thunder, Inc*., 690 A.2d at 589 (distinguishing prior decision in *Karl's Sales & Service, Inc. v. Gimbel Bros. Inc*., 249 N.J.Super. 487, 592 A.2d 647 (App.Div.1991), in which "there were no allegations of bad faith or dishonesty on the part of the terminating party" to the contract); *Association Group Life, Inc. v. Catholic War Veterans*, 61 N.J. 150, 293 A.2d 382, 384 (1972) (stating that a contracting party breaches duty of good faith and fair dealing by engaging in behavior that was "not contemplated by the spirit of the contract and fell short of fair dealing"); *Emerson Radio Corp.*, 80 F.Supp.2d at 311 ("The Restatement and the [New Jersey] cases note a state of mind or malice-like element to breach of good faith and fair dealing, holding that the duty excludes activity that is unfair, not decent or reasonable, nor dishonest."); *Kapossy v. McGraw–Hill, Inc.*, 921 F.Supp. 234, 248 (D.N.J. 1996) (noting that courts "imply a covenant of good faith and fair dealing in order to protect one party to a contract from the other party's bad faith misconduct or collusion with third parties where there is no breach of the express terms of the contract"); see also Restatement (Second) of Contracts § 205 cmt. a (noting that "[t]he phrase 'good faith' is used in a variety of contexts, and its meaning varies somewhat with the context" and explaining that "[g]ood faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness.").

Section 205 of the Restatement (Second) of Contracts provides examples of the types of behavior that can give rise to a claim for breach of the implied duty of good faith and fair dealing in the context of one's performance under a contract:

Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. But the obligation goes further: bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of power to specify terms, and interference with or failure to cooperate in the other party's performance.

- 14 -

Id. § 205 cmt. d (emphasis added).

Black Horse Lane Assoc., L.P. v. Dow Chem. Corp., 228 F.3d 275, 288 – 89 (3d Cir. 2000)

As set forth above, good faith performance or enforcement of a contract emphasizes faithfulness to an agreed upon common purpose and consistency with the justified expectations of the other party.  Here, we have exactly the opposite.  The parties agreed to a common purpose of fairness and impartiality with respect to future development of Plaintiffs' lands, where future applications would be decided by a conflict land use board.  Instead of demonstrating faithfulness to that common purpose, the Town has acted dishonestly and in bad faith to purposely destroy and frustrate the justified expectations of the Plaintiffs.

### III.    The Court Should Exercise its Equitable Powers to Enforce Summarily the Settlement Agreement Made in the Case Pending Before it.

In Paragraph 4.1 of the Settlement Agreement, Plaintiffs reserved the right to seek to enforce any terms of the Agreement against Defendant upon a breach of same.  Exhibit A.

In Paragraph 6.14 of the Settlement Agreement, the parties agreed that the United States District Court for the District of New Jersey "shall retain jurisdiction to enforce its terms" and that the parties consent to the District Court having "sole and exclusive jurisdiction" in any action or proceeding regarding the Settlement Agreement.  Exhibit A.

Additionally, a court has the inherent authority to enforce agreements settling litigation before it.  See Bowater North America Corp. v. Murray Machinery, Inc., 773 F.2d 71, 76–77 (6th Cir.1985) (citing cases); Rosso v. Foodsales, Inc., 500 F.Supp. 274, 276 (E.D.Pa.1980) (citing cases); Read v. Baker, 438 F.Supp. 732, 735 (D. Del. 1977); see also Pugh v. Super Fresh Food Markets, Inc., 640 F.Supp. 1306, 1307 (E.D. Pa. 1986); Morris v. Gaspero, 522 F.Supp. 121, 125

(E.D. Pa. 1981); *cf.* Pennwalt Corp. v. Plough, Inc., 676 F.2d 77, 80 (3rd Cir. 1982) ("[settlement] agreements are specifically enforceable and broadly interpreted").

The assertion and exercise of jurisdiction to enforce the Settlement Agreement here furthers the federal policies of promoting amicable adjustment of disputes and avoiding costly and time-consuming litigation in federal court. *See* Pennwalt Corp., 676 F.2d at 80–81; Pugh, 640 F.Supp. at 1307; AMF, Inc. v. Brunswick Corp., 621 F.Supp. 456, 462 (E.D.N.Y. 1985); Morris, 522 F.Supp. at 125; Rosso, 500 F.Supp. at 276.

Accordingly, the express provisions of the Settlement Agreement, alongside the federal policies promoting settlement, conclusively support the exercise of the Court's inherent authority to enforce the Settlement Agreement in this case.

For the reasons expressed above, Plaintiffs respectfully request that the Court enter an Order providing that: that:

> Prior to its adoption, the Defendant shall remove from the Comprehensive Master Plan (CMP) Section 6.4.26.J., Map #39, and any recommendation that any of the Plaintiffs' property be evaluated for Redevelopment Area designation; or, *in the alternative*:

> Prior to its adoption, the Defendant shall amend the CMP to make explicitly clear that any evaluation of the Plaintiffs' property for redevelopment area designation will not result in condemnation, diminution in the Plaintiffs' property or development rights under current zoning, or the naming of or engagement with any redeveloper other than Plaintiffs or their designee.

## IV. Defendant Town of Hammonton has Acted in Bad Faith and the District Court Should Levy Appropriate Sanctions Against the Town, Including Monetary Penalties and the Award of Attorney's Fees for Enforcement.

Finally, Defendant Town of Hammonton has acted in bad faith and the District Court should levy appropriate sanctions against the Town, including monetary penalties, damages, and the award of attorney's fees for enforcement of the Settlement Agreement.

Federal Courts are empowered to "'protect the administration of justice by levying sanctions in response to abusive litigation practices.'" Kovilic Const. Co., v. Missbrenner, 106 F.3d 768, 772-73 (7th Cir. 1997); Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 11 (1st Cir. 1985), *cert. denied*, 475 U.S. 1018 (1986), quoting Penthouse Int'l, Ltd. v. Playboy Enters., 663 F.2d 371, 386 (2d Cir. 1981).

The source of the court's inherent power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash R.R., 370 U.S. 626, 630-631 (1962). *See also* Brockton Sav. Bank v. Peat, Marwick, Mtichell & Co., 771 F.2d 5, 11 (1st Cir. 1985), *cert. denied*, 475 U.S. 1018 (1986).

Settlement agreements may be specifically enforced, as requested here. *See* Pennwalt Corp. v. Plough, Inc., 676 F.2d 77, 80 (3d Cir. 1982). Moreover, an award of damages for failure to comply with the settlement agreement is also an available remedy. Hobbs & Co. v. American Investors Management, Inc., 576 F.2d 29, 33 & n. 7 (3d Cir. 1978) (breach of the agreement entitled the nonbreaching party to specific performance or an award of unliquidated damages, as appropriate).

Courts may also grant attorneys' fees and costs where authorized by statute or party agreement, or where there is bad faith. *See* Hobbs v. Am. Investors Mgt., Inc., 576 F.2d 29, 35 (3d Cir. 1978); *see also* Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991). Some courts have found that a party's failure to abide by the terms of a settlement agreement rises to the level of bad faith, *See* In re Elonex Phase II Power Management Litig., No. 01-082, 2003 WL 21460391, at *3 (D. Del. June 23, 2003).

In this case, the Defendant has acted in bad faith as set forth above.  Moreover, attorney's fees for enforcement are provided for by party agreement.  Paragraph 6.14 of the Settlement Agreement states in relevant part, "The Parties further agree that in the event any Party is required to take legal action to enforce the terms of this Agreement, in addition to seeking any other available remedies, the non-breaching Party as determined by the Court shall be entitled to recover from the breaching Party or Parties, its reasonable costs and attorneys' fees incurred in connection with enforcing the terms of this Agreement and seeking any other available relief."  Exhibit A.

Plaintiffs have incurred costs and attorney's fees in connection with the preparation and filing of the instant motion for enforcement, as set forth in the Certification of Counsel filed herewith.  An appropriate award of costs and attorney's fees should be made here in light of the Town's outrageous and retaliatory conduct and its stubborn refusal to correct the issues when brought to the Town's attention.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request relief, including the exercise of the Court's equitable powers to specifically enforce the Settlement Agreement in the case pending before it.  Defendant Town of Hammonton has acted in bad faith and Plaintiffs respectfully request that appropriate sanctions be levied against the Town, including monetary penalties, damages, and the award of costs and attorney's fees for enforcement.

DATED:  February 23, 2024

*s/ Douglas L. Cody*
Douglas L. Cody, Esquire
THE CODY LAW FIRM, L.L.C.
651 S. White Horse Pike
Hammonton, NJ 08037
(609) 561-1015
douglascody@comcast.net
*Attorneys for Plaintiffs*

- 18 -